IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RAYTHEON AIRCRAFT COMPANY,[1]  )
                               )
            Plaintiff,         )
                               )
v.                             )      No.  07-1020-WEB
                               )
AVTRAK, INC.,                  )
                               )
            Defendant.         )
                               )

**Memorandum and Order**

This matter came before the Court on August 21, 2007, for a hearing on Raytheon's Motion to Enforce Injunction.  (Doc. 41).  The parties have now submitted their proposed findings of fact, and the Court is prepared to rule.  For the reasons set forth herein, Raytheon's motion to enforce the injunction will be granted.

   I. *Findings of Fact*.

   1. This matter is before the Court on Raytheon's Motion to Enforce an Injunction.  (Doc. 41).  The Court has jurisdiction of the matter by virtue of the Injunction filed by the Court on February 23, 2007.  (Doc. 38).  The Injunction included a provision expressly stating that, in the event of a disagreement between the parties as to whether certain data was proprietary information of one of the parties, the Court would retain jurisdiction to make a determination upon application by either party.

---

[1] Due to a recent sale of the company, Raytheon Aircraft Company is now known as Hawker Beechcraft Corporation.  Doc. 39.  For the sake of clarity, the Court will continue to refer to the company as Raytheon for purposes of this opinion.

Paragraph 6 of the Injunction signed by the Court on February 23, 2007, provides as follows:

> Proprietary information (as dealt with in Section 5 of the Service, Support, and License Agreement) created by AvTrak and delivered to RAC will be returned to AvTrak or its destruction certified within thirty (30) days after the full migration of all aircraft data to CAMP and likewise, RAC's proprietary information will be returned by AvTrak or its destruction certified at the same time. Each party shall provide the other with a list of its claimed proprietary information within thirty (30) days of the entry of this injunction. If there is any disagreement as to whether the data is proprietary to AvTrak or RAC, the Court shall retain jurisdiction to make a determination upon application by either party.

2. The Service, Support and License Agreement ("the Agreement"), which is expressly referenced in paragraph 6 of the Injunction, was entered into by Raytheon and AvTrak on October 6, 2004. The recitals of the Agreement state that AvTrak provides an internet-based aviation maintenance management service known as AvTrak GlobalNet, and that Raytheon desired to retain AvTrak to provide certain computer software, hardware and related services and support concerning Raytheon's FACTS Program. Raytheon is a manufacturer of general aviation aircraft and also through its affiliated companies maintains and repairs aircraft. AvTrak does not manufacture or maintain general aviation aircraft.

3. Prior to the execution of the Agreement, Raytheon's own FACTS Program for aviation maintenance tracking was provided directly by Raytheon for over 100 aircraft.

4. Paragraph 1.1.3 of the Agreement defined AvTrak Aircraft Data as:

> [D]ata in the System related to non-RAC aircraft, and to specific RAC aircraft which are subject to an AvTrak GlobalNet end user agreement.

5. Paragraph 1.1.24 of the Agreement defined RAC Aircraft Data as:

> T]he maintenance tracking, inventory tracking and related information and data with respect to RAC Aircraft that is, or that is to be, maintained and processed by the System pursuant to this Agreement.

6. Paragraph 1.1.23 of the Agreement defined RAC Aircraft as:

> [A]n aircraft model as to which the Type Certificate is owned in whole or in part by a RAC Party as of the Effective Date or at any time thereafter.

AvTrak points out that the foregoing provisions were not expressly incorporated into the Injunction signed by the Court. Nevertheless, the Court concludes they are relevant in applying the language of the Injunction, because the Injunction expressly incorporates by reference the broad definition of "Proprietary Information" from Paragraph 5 of the 2004 Agreement. The latter definition includes "any information reasonably deemed by a party to constitute its confidential or proprietary information...."

7. Paragraph 2.4 of the Agreement provided that AvTrak agreed it would host the System and the RAC Aircraft Data, including future additions to that data on computer systems operated by or on behalf of AvTrak.

8. After the Agreement was entered into between the parties, the FACTS aircraft data that had formerly been on Raytheon's computer was migrated to AvTrak's System in 2004 and early 2005 pursuant to the terms of the Agreement. Specifically, paragraph 2.3 of the Agreement provided that AvTrak "will assist RAC in migrating the aircraft maintenance tracking, inventory tracking and related information and data residing in the RAC Legacy FACTS System" in accordance with appendix B of the Agreement. AvTrak was paid for receiving the aircraft data from Raytheon.

9. As new customers purchased aircraft from Raytheon, they were enrolled in the

FACTS program and AvTrak hosted that aircraft data on its computer system. While the Federal Aviation Regulations require that the owner of an aircraft maintain written logbooks on the maintenance and repairs performed on the aircraft, the regulations do not require that the owner maintain those records electronically in a computer system.

      10. Paragraph 5.1 of the Agreement defined proprietary information as:

> [A]ny information reasonably deemed by a party to constitute its confidential or proprietary information, including without limitation the pricing, methods, processes, financial data, lists, statistics, Software, Documentation, strategic plans, operating data, or related information of each of the parties and/or its or their customers and suppliers, concerning past, present, or future business activities of said entities. Proprietary Information shall include all such information disclosed by either party prior to the execution of this Agreement, and shall include the terms and conditions, including all Appendices of this Agreement.

      11. Paragraph 5.2 of the Agreement restricted the use of proprietary information received by either party, and paragraph 5.3 of the Agreement provided that upon the termination or expiration of the Agreement or the request of the party having proprietary rights to proprietary information, the party in possession of the information would promptly return it, including any copies, extracts and summaries, or with the other party's written consent would promptly destroy the information and any copies, extracts and summaries, and provide written certification of having done so.

      12. Paragraph 6.1 of the Agreement provided that Raytheon retained all right, title and interest to the RAC Aircraft Data, excluding any such data that constitutes AvTrak Aircraft Data, and that AvTrak shall not use or copy the RAC Aircraft Data except on behalf of Raytheon in accordance with the Agreement. Paragraph 6.1 expressly provided that the RAC Aircraft Data shall be deemed to be the proprietary information of Raytheon.

13. Raytheon sold its aviation maintenance tracking business to CAMP in December of 2006 and notified AvTrak that it was terminating the Agreement in January, 2007. AvTrak's obligations under the warranty, confidentiality, proprietary, exclusivity and indemnification provisions of the Agreement survived the termination as provided in paragraph 10.3.4.

14. AvTrak cut off Raytheon's access to the aircraft data on the System in January, 2007, and this lawsuit was filed to restore Raytheon's access to the aircraft data. Pursuant to the terms of the Injunction entered on February 23rd, AvTrak agreed to assist in the migration of the aircraft data to CAMP, for which AvTrak was compensated. Paragraph 2 of the Injunction set forth the steps that would be followed in migrating the aircraft data from AvTrak to CAMP. The migration of the aircraft data began after the Injunction was entered on February 23, 2007, and was completed either on July 9th or 14th, 2007. Raytheon requested that the aircraft data for customers who had not elected to stay with AvTrak be returned to Raytheon or that AvTrak certify as to its destruction of the aircraft data. AvTrak disputed that the aircraft data was Raytheon's proprietary information, and the Motion to Enforce Injunction was then filed by Raytheon.

15. The aircraft data that was entered into the FACTS program and processed by AvTrak's System during the term of the Agreement was sometimes entered directly by Raytheon, and sometimes it was entered by the owner of the aircraft or its designee. The type of aircraft data that was entered included all maintenance performed on the aircraft, including compliance with Airworthiness Directives issued by the FAA, compliance with Service Bulletins issued by Raytheon, compliance with other inspection requirements issued by Raytheon or components manufacturers of aircraft parts, and the flight logs on the aircraft. Examples of the

aircraft data hosted by AvTrak on its System were Exhibits 14-20 offered by Raytheon at the hearing. The definition of RAC Aircraft Data does not require that Raytheon enter the data into the System.

16. Derek Taylor of Raytheon provided AvTrak with a list of claimed proprietary information on March 22, 2007. This list identified the following information as proprietary:

> 1. Owner/Operator information in the User Administration Area of the AVTRAK program, this includes contact names, address, email address, phone and fax numbers, logins and password.
> 2. Owner/Operator/Maintenance Contacts on Aircraft Home Page in the AVTRAK program, this includes contact name, phone number, email address, notes, aircraft operation, primary and secondary maintenance provider and chief pilot.
> 3. Attachments added to ATA codes, includes logbook entries, 337's, manuals, ICA's or etc.
> 4. We need a database or Excel file copy of the master data for each model master that RAC controls, this includes maintenance item, ata code, initial interval, recurring interval, tolerances, part numbers, ata chapter, effectivity, document reference information and notes. Plus the engine, apu, propeller masters.

As AvTrak points out, Taylor's e-mail did not expressly reference "customer information or data."

At the same time as Mr. Taylor's communication, the process of migrating the aircraft data from AvTrak to CAMP had started.

17. Glenn Hertzler of AvTrak provided Raytheon with a list of AvTrak's claimed proprietary information on March 23, 2007. The aircraft data that is the subject of Raytheon's Motion to Enforce Injunction was not claimed by Mr. Hertzler as AvTrak's proprietary information, nor has AvTrak taken the position that the aircraft data belongs to AvTrak. AvTrak

contends, however, that Raytheon likewise does not own customer information.

Notwithstanding AvTrak's contention that Raytheon does not own customer information, Paragraph 5.1 of the Agreement defined proprietary information to include "without limitation the pricing, methods, processes, financial data, lists, statistics, Software, Documentation, strategic plans, operating data, or related information of each of the parties *and/or its or their customers* and suppliers, concerning past, present, or future business activities of said entities...."

18. On July 10, 2007, after Raytheon's access to Avtrak's System was terminated, Mr. Taylor requested that Avtrak return to Raytheon all maintenance data for FACTS customer's aircraft or that the data be deleted, and that AvTrak provide a certification of having done so. AvTrak has not returned such aircraft data and has not certified that it has deleted the information from AvTrak's System.  Under the totality of the circumstances, the Court concludes that Raytheon substantially complied with the Injunction insofar as it required each party to provide timely notice of what it considered to be its proprietary information.

19. The aircraft data that Raytheon requested to be returned or deleted by AvTrak falls within the definition of RAC Aircraft Data in the Service, Support & License Agreement. Pursuant to paragraphs 5.1 and 6.1 of that Agreement, such aircraft data is Raytheon's proprietary information. The Court finds that AvTrak was obligated to return such aircraft data to Raytheon or to certify its destruction pursuant to paragraph 6 of the Injunction.  No evidence has been presented to show that deletion of the aircraft data from AvTrak's System would violate any Federal Aviation Regulation. Further, the aircraft data was sold to CAMP and has been migrated to CAMP's computer system, and the customers can access that information through CAMP.

The Court is not persuaded by AvTrak's claim that the possibility that data was corrupted or deleted during the migration to the CAMP system relieves AvTrak of its obligation under the Injunction to return or destroy the proprietary RAC aircraft data in its possession.  Nor is AvTrak's obligation altered by its contention that under FAA regulations or advisory interpretations "no one other than the aircraft owner can claim ownership of the aircraft maintenance records."  The evidence before the Court is that FAA regulations require owners to maintain written log books containing aircraft maintenance history and service requirements.  No showing has been made that AvTrak's return or destruction of the data at issue would in any way violate FAA regulations.   Moreover, this is not a lawsuit by a customer claiming an entitlement to the data in AvTrak's possession.  It is a dispute between AvTrak and Raytheon, and as between these parties the Injunction – and the portions of the Agreement necessarily incorporated by the Injunction – define AvTrak's obligations concerning the return or destruction of such data.  AvTrak presented evidence that its retention of such data could conceivably be of some benefit or convenience to a former customer who decided to switch back to AvTrak – and that AvTrak itself would likely benefit in that event from not having to re-enter the information in its system.  But again, the parties' obligations are spelled out in the Injunction.  The Court will not re-write those obligations by engaging in a cost/benefit analysis or by weighing the respective interests of the parties.

20. Mr. Hertzler testified that the information in Exhibits 14-20 contained aircraft data on a Raytheon aircraft. Further, Mr. Hertzler's email of July 19, 2007, which was Exhibit 11, acknowledges that the information requested to be returned by Raytheon is aircraft data. Exhibit 11 is the first written indication that AvTrak intended to keep the aircraft data.

21. AvTrak would not have had access to the aircraft data that is the subject matter of Raytheon's Motion but for the fact that it signed the Service, Support & License Agreement dated October 6, 2004.  Paragraph 6.1 provided that AvTrak shall not use or copy the RAC Aircraft Data except on behalf of Raytheon in accordance with the Agreement.

The Court finds that under the terms of the Injunction previously entered, the aircraft data in question is Raytheon's "proprietary information" insofar as defendant AvTrak is concerned.  As such, the Court finds that Raytheon is entitled to the return or destruction of such data under the terms of the injunction.  Accordingly, the Court will order AvTrak to return the proprietary information sought by Raytheon or to certify the destruction of such information in accordance with the terms of the Injunction and this order.

22. The Court rejects Raytheon's claim that AvTrak engaged in bad faith or in vexatious conduct by declining to return or destroy the customer maintenance data that is the subject of this motion.  The Court is persuaded that the parties entered in good faith into a settlement of the original motion for a preliminary injunction, and that as part of the settlement they recognized that good-faith disputes over whether particular items of information qualified as proprietary were a distinct possibility.  Accordingly, the agreed-upon Injunction of February 23, 2007 included a provision for continuing jurisdiction by the Court and a mechanism for determination of any such disputes.  The Court sees no evidence that this was anything other than a good-faith dispute over application of the "proprietary information" definition to a particular subset of information exchanged by the parties.  While the Court does not find AvTrak's arguments for failing to return that information persuasive, neither does it consider those argument to be legally frivolous or in made bad faith.  Nor has Raytheon identified any statutory or contractual basis for

an award of attorney's fees.  *Cf.  Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975) (The "American rule" is that the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser);  *Martinez v. Roscoe*, 100 F.3d 121, 123 (10th Cir. 1996) (noting exception that allows award of attorney's fees if a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons).  Accordingly, Raytheon's request for an award of attorney's fees on its motion to enforce the Injunction will be denied.

    II.  *Conclusion*.

Plaintiff Raytheon's Motion to Enforce Injunction (Doc. 41) is GRANTED as set forth above.   The Court orders defendant AvTrak to comply with the terms of the Injunction and to return to Raytheon all information related to the FACTS customers, including all maintenance data for FACTS customers' aircraft, unless the FACTS customer enrolled with AvTrak on or before July 9, 2007.  Defendant shall alternatively comply by certifying that the aircraft data has been permanently deleted from its System.  The Court notes the testimony of Mr. Hertzler that AvTrak would need "a week or two" to comply with such an order.  Accordingly, within two weeks of the date this order is filed,  AvTrak shall serve notice on the Court and on Raytheon certifying its compliance with this order.

    IT IS SO ORDERED this   12th   Day of September, 2007, at Wichita, Ks.

                                            s/Wesley E. Brown
                                            Wesley E. Brown
                                            U.S. Senior District Judge